IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HARRY COOKS,

      Petitioner,                           No. S:07:cv-1450- MDS

  vs.                                  <u>ORDER</u>

D.K. SISTO,

      Respondent

_____/

     Harry Cooks (Petitioner) is proceeding *pro se* with an application for a writ of habeas corpus under 28 U.S.C. § 2254. Pending before the court are Petitioner's "Petition for Habeas Corpus," filed on July 20, 2007 (Doc. 1); Warden D.K. Sisto's (Respondent's) "Answer to Petition for Writ of Habeas Corpus," filed on January 15, 2008 (Doc. 5), and Petitioner's "Notice of Traverse to Respondents Answer," filed on January 31, 2008 (Doc. 6). For the reasons discussed below, Petitioner's application for a writ of habeas corpus pursuant to § 2254 is DENIED.

1

PDF created with pdfFactory trial version www.pdffactory.com

**I**

**A**

Petitioner was found guilty of murder of the first degree and robbery by a jury in the Alameda County Superior Court. Petitioner was sentenced to a total state prison term of 25 years to life. Petitioner's statutorily established parole date was October 23, 1999. At his first parole hearing in 1998, he was denied parole on the ground that he posed an unreasonable risk of danger to public safety and rescheduled for the next hearing. His next hearing in 2002 resulted in a denial of parole, primarily on the same grounds. On August 31, 2005, the Board again denied Petitioner a parol date. Petitioner does not challenge the propriety of his convictions; instead, he challenges the Board of Parol Hearings' 2005 denial of parole.

**B**

Petitioner timely filed a writ of habeas corpus in Alameda County Superior Court in which he alleged that the Board violated his due process by denying him a parole release date. Petitioner alleged that: (1) the Board's reliance on his commitment offense violated due process; (2) the Board's finding that he had not taken advantage of institutional programs is unsupported by the evidence; and (3) the court denied parole because of his adherence to a religious mandate forbidding him to cut his hair. After briefing by the parties, the court denied his petition on May 11, 2006.

**C**

Petitioner timely filed a petition for review of the Superior Court's decision in the California Supreme Court. On April 18, 2007, the California Supreme Court denied the Petition for writ of habeas corpus.

**D**

Petitioner timely filed a petition for a writ of habeas corpus before this court on July 20, 2007. On January 15, 2008, Respondent filed its Answer to the Petition. In its answer, Respondent admits that Petitioner has properly exhausted his state judicial remedies regarding the

PDF created with pdfFactory trial version www.pdffactory.com

Board's 2005 denial of parole. On January 31, 2008, Petitioner filed a "Notice of Traverse to Respondent's Answer."

**II**

The Board of Parole made the following observations when reviewing the commitment offense at the August 2005 hearing:

> On August 11, 1983, Harry Cooks and crime partners, which has [sic] never been identified, strangled Edward Akers, age 64 and ransacked his home and person taking a safe, money, marijuana and stereo equipment. Cooks was identified in the home controlling the victim before the murder and later on the steps and the living room. Cooks bragged to two separate witnesses about participating in the robbery/murder. The search warrant was obtained for Cooks' home where a reel-to-reel recorder was recovered [that] was taken in the robbery. Autopsy results showed numerous injuries to the victim consistent with the protracted beating. A sweater was used to strangle the victim and could have [been] used to coerce information about a location of money and drugs, as well as, the combination of the safe, which was ultimately removed from the home.

Board of Parole Transcript, 11-12. After deliberation, the Board announced its decision. The decision read, in part:

> [W]e have weighed all the information that has been received and submitted by yourself and [the] public ... [and] conclude that you are not suitable for parole and pose an unreasonable risk of danger to society or a threat to public safety if released from prison. . . .
> First thing we look at is the commitment offense, which I understand you deny, but we are obligated, and as I indicated, we assume as true the facts of that offense as are indicated. The remedy to dispute that was with the courts. And that offense was carried out in [an] especially cruel or callous manner. It was carried out in a dispassionate manner in that the perpetrators went to what appeared to their marijuana supplier or somebody they knew had marijuana and went to the residence for the purpose of obtaining that product, and in the process beat the individual involved and gagged him, which ultimately resulted in a very vicious death. The victim was abused, defiled or mutilated during the offense. It was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering, and the motive of obtaining marijuana was very trivial in connection with the vicious nature of the offense. . . .
> That offense was preceded and represented in escalating pattern of criminal conduct as indicated by the juvenile offenses that we discussed. . . .Which frankly, when you look at the evidence, your relationship to this offense and your descriptions of the other offenses for which you were convicted, there was a pattern of denial there that causes credibility problems with the Panel when we evaluate what the evidence has shown in those offenses with what you have to say. You seem to be willing to offer that you were too often in the wrong place at the

3

PDF created with pdfFactory trial version www.pdffactory.com

wrong time. Now, your institutional behavior has been limited. You haven't taken full advantage of opportunities available to you. You have accumulated numerous 115s, much of which seems to [have] surrounded by this hair issue. . . .
[I]n your particular case, you're not getting denied because of your hair or your grooming. You're getting denied because of your choice to dig your heels on this has limited your program options.... your choices have limited you and as long as you understand that [] your choice keeping you from getting this program and this program is between you and the door, and you're okay with that.

Board of Parole Transcript, 68-70, 75-76. The Board denied parole for two years, and the decision became final on December 29, 2005.

### III

In his application for a writ of habeas corpus, Petitioner claims: (a) that the Board of Parole's continued reliance on his commitment offense and criminal history when denying parole violates petitioner's due process rights, (b) that the Board's finding that petitioner has not taken advantage of institutional programs violates his due process rights because it is contrary to the record, and, finally, (c) that the Board religiously persecuted petitioner, in violation of his First Amendment constitutional right, by denying him parole because of his adherence to his religious mandate to not cut his hair.

As Petitioner's application for a writ of habeas corpus was filed after the effective date of the Antiterrorism and Death Penalty Act of 1996 (AEDPA), his application is subject to the procedures and standards provided therein. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Pursuant to AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a

4

PDF created with pdfFactory trial version www.pdffactory.com

person pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d)-(e)(1).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S 362, 412-13 (2000)(O'Connor, J., concurring). A state court's application of clearly established federal law is "unreasonable" within the meaning of AEDPA when it correctly identifies the governing principle but applies it to the facts of the case in an objectively unreasonable manner. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). An unreasonable application may also occur if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. Thus, before this court may grant habeas relief under the unreasonable application clause, the state court's application of clearly established federal law must be more than merely "incorrect or erroneous," it must be "'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (quoting *Williams*, 529 U.S. at 409)). When the state's highest court has summarily denied Petitioner's claims, a federal court must look through the state's highest court's decision and presume that it adopted the reasoning of the last state court that issued a reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 804-806 n.3 (1991).

In California, the Board of Parole Hearings (BPH) must set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). The overriding concern in determining parole suitability is

5

PDF created with pdfFactory trial version www.pdffactory.com

public safety and the focus is on the inmate's current dangerousness. *In re Dannenberg*, 34 Cal.4th 1061, 1086, 23 Cal.Rptr.3d 417, 104 P.3d 783, cert. denied, 546 U.S. 844, 126 S.Ct. 92 (2005). The circumstances tending to show unsuitability or suitability are set forth in Cal. Code. Regs., tit. 15 § 2402(c) and (d). Circumstances tending to show that a prisoner is unsuitable for release include the following: (1) the commitment offense, where the offense was committed in an "especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6)"serious misconduct in prison or jail." Circumstances tending to show suitability for release include: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed the crime as the result of significant stress in his life; (5) the prisoner lacks any significant history of violent crime; (6) the prisoner's present age reduces the probability of recidivism; (7) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (8) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release."

   A parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record" or is "otherwise arbitrary." *Sass v. California Bd. Of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006). In addition, the evidence underlying the board's decision must have some indicia of reliability. *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002). Accordingly, if the board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were

6

PDF created with pdfFactory trial version www.pdffactory.com

without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)). The some evidence standard of *Superintendent v. Hill* is clearly established federal law in the parole context for purposes of § 2254 (d).

**A**

Cooks argues that the Board of Parole's continued reliance on his commitment offense and criminal history when denying parole violated his due process rights. In *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003), the Ninth Circuit Court of Appeals cautioned that "a continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." In *Sass*, 461 F.3d at 1129, however, the court criticized this statement from *Biggs* as improper: "Under AEDPA [Antiterrorism and Effective Death Penalty Act of 1996] it is not our function to speculate about how future parole hearings could proceed." *Id.* In *Sass*, the court concluded that the parole board is not precluded from relying on unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in determining parole suitability. *Id.* In *Irons*, 505 F.3d 846, 850-51 (9th Cir.2007), the court sought to harmonize its decisions in *Biggs* and *Sass*. *Irons* determined that due process was not violated by the use of the commitment offense and pre-offense criminality to deny parole for a prisoner sixteen years into his seventeen years-to-life sentence. *Irons* found that a prisoner's commitment offense, by itself, may justify parole denial if the BPH can "'point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons*, 505 F.3d at 852, quoting *Dannenberg*, 34 Cal.4th at 1071. Factors which may be considered in determining if an offense was committed "in an especially heinous, atrocious or cruel manner" include that "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution style murder," "[t]he offense was carried out in a

7

PDF created with pdfFactory trial version www.pdffactory.com

manner which demonstrates an exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs., tit. 15 §2402(c)(1)(B), (D) and (E).

In sum, BPH may look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that a prisoner is not currently suitable for parole even after the initial denial of parole. Here, the BPH found that Cooks's "offense was carried out in [an] especially cruel or callous manner" and that "the motive of obtaining marijuana was very trivial in connection with the vicious nature of the offense." The BPH also found that the offense "was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering." Applying the aforementioned framework, at least some evidence in the record supports the Board's finding that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society and a threat to the public safety if released from prison. *Hill*, 472 U.S. at 455-56. [1] Under these circumstances, Petitioner's commitment offense, by itself, was sufficient to deny him parole. The BPH's conclusions regarding the commitment offense are supported by some evidence in the record. *See Irons*, 505 F.3d at 852-53 (callousness of offense and trivial motive show "some" evidence of unsuitability despite a positive showing on virtually all other suitability factors).

Further, as the Alameda County Superior Court found, "[t]he record presented to this Court for review demonstrates that there was certainly some evidence, including, but not limited to the committing offense, Petitioner's past criminal behavior, [and] the need for Petitioner to continue to actively participate in NA and/or AA programs." (Alameda County Superior Court decision, Ex. 5 to Ct. Rec. 5). The BPH did not rely solely on Petitioner's conduct prior to imprisonment, BPH also relied on post-imprisonment conduct, including the fact that Cooks was

---

[1] Cooks relies heavily on *Hayward v. Marshall,* 521 F.3d 536, 546-47 (9th Cir. 2008), in his Opposition to Respondents answer as determining what evidence can support reasons the BOH cites for denying parole. The Ninth Circuit has decided to rehear this case en banc, 527 F.3d 797 (9th Cir. 2008), and thus Cooks cannot rely on *Hawyard* as precedent in the interim.

8

PDF created with pdfFactory trial version www.pdffactory.com

not taking responsibility for his crime, as he was only "willing to offer that you were too often in the wrong place at the wrong time." The BPH also noted that Cooks's "institutional behavior has been limited," that he hasn't "taken full advantage of opportunities available to [him]." Accordingly, Petitioner's due process rights were not violated by the denial of parole and his August 31, 2005 hearing.

**B**

Petitioner also argues that the Board's finding that petitioner has not taken advantage of institutional programs violates his due process rights because it is contrary to evidence in the record. Petitioner contends that this finding was unsupported by the evidence and was therefore arbitrary and capricious and violates due process.

First, as discussed above, in this case the immutable factors surrounding Petitioner's commitment offense, by itself, were sufficient to deny him parole. The Board's finding that petitioner has not taken advantage of institutional programs, is, however, supported by some evidence. Petitioner has not participated in a substance abuse program since 1997, although the program has been available. The BPH found that in order to become suitable for parole, Petitioner must "address very appropriately and very aggressively" substance abuse by "continued participation in AA or NA or programs of like import." There was some evidence to support the BPH's finding, and thus finding was not arbitrary and capricious, and Petitioner's due process rights were not violated.

**C**

Finally, Petitioner argues that the Board religiously persecuted petitioner, in violation of his First Amendment constitutional right, by denying him parole because of his adherence to his religious mandate to not cut his hair. The Superior Court of Alameda County dismissed this claim, saying that the BPH "made it abundantly clear that the denial

9

PDF created with pdfFactory trial version www.pdffactory.com

of parole was not predicated on Petitioner's choice of hairstyle or any of his religious practices." (Alameda County Superior Court decision, Ex. 5 to Ct. Rec. 5).

We note that this court would not find that Petitioner's numerous CDC-115s for failing to cut his hair based on his religious beliefs constitute "some evidence" to support the denial of parole. *See Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir.2005) (holding that because the grooming policy puts substantial pressure on inmates to abandon their religious beliefs by cutting their hair, it constitutes a substantial burden on the practice of their religion under the Religious Land Use and Institutionalized Persons Act of 2000.) However, this court finds that the BPH made it clear that this was not the reason behind the parole denial when it stated "you're not getting denied because of your hair or your grooming." If the BPH had simply made this statement and not articulated any further evidence to support its parole denial, there may have been a problem under *Warsoldier*. Here, however, the BPH specifically relied upon Petitioner's failure to participate in self-help programming and the callous nature of Petitioner's underlying commitment offense. These both constitute legitimate evidence that petitioner's denial of parole did not constitute a denial of due process. Thus, Petitioner's claim that the Board violated his First Amendment rights by is denied.

**Conclusion**

Based upon the record in this case, the state courts' determination that there was some reliable evidence to support the BPH's decision is not contrary to or an unreasonable application of federal law. As Petitioner has failed to show that the state court's denial of his federal constitutional claims "was contrary to, or involved an unreasonable application of, clearly established Federal law," *See* 28 U.S.C. § 2254(d)(1), the application for a writ of habeas corpus is DENIED.

Accordingly, IT IS HEREBY ORDERED that

10

PDF created with pdfFactory trial version www.pdffactory.com

1. Petitioner's application for a writ of habeas corpus is DENIED.

2. The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the case.

DATED: April 28, 2009

/s/ Milan D. Smith, Jr.
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

PDF created with pdfFactory trial version www.pdffactory.com